IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MTGLQ INVESTORS, LP,

 Plaintiff,

v.                           No. 1:17-cv-00487-KG-LF

MONICA L. WELLINGTON, THE MONICA L.
WELLINGTON DECLARATION OF TRUST
DATED DECEMBER 28, 2007, ALTURA VILLAGE
HOMEOWNERS' ASSOCIATION, INC., JPMORGAN
CHASE BANK, N.A., AND THE UNKNOWN SPOUSE
OF MONICA L. WELLINGTON,

 Defendants,

and

MONICA L. WELLINGTON,

 Counter-Claimant,

v.

MTGLQ INVESTORS, LP,

 Counter-Defendant,

and

MONICA L. WELLINGTON,

 Cross-Claimant,

v.

JPMORGAN CHASE BANK, N.A.,

 Cross-Defendant,

and

MONICA L. WELLINGTON,

Third-Party Plaintiff,

v.

WEINSTEIN & RILEY, P.S., ELIZABETH V.
FRIEDENSTEIN, RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "Defendant Monica Wellington's Motion to Dismiss Complaint of MTGLQ Investors, LP" ("Motion to Dismiss Complaint") filed on June 23, 2017. (Doc. 9). Plaintiff MTGLQ filed its response on July 7, 2017, and Ms. Wellington filed her reply on July 21, 2017. (Docs. 18 and 27). The Court conducted a hearing on March 28, 2018, in which it briefly explained its reasons for denying this motion. That same day, the Court entered an Order noting its tentative ruling. (Doc. 69). This Memorandum Opinion and Order constitutes the full written opinion mentioned at the hearing and in the Order.

*I. Background*

This is a foreclosure case. On February 20, 2007, Profolio Home Mortgage Corporation ("Profolio") loaned Ms. Wellington $134,500.00 for the purchase of real property in Albuquerque, New Mexico. (Doc. 1-1) at 2, ¶ 7; *Id.* at 8. The Note for this loan contains an "Allonge to Note,"[1] created on the same date as the Note, detailing an undated special indorsement from Profolio to Ohio Savings Bank signed by Baron Wilhelm, President.[2] *Id.* at 11 (stating "[p]ay to the order of Ohio Savings Bank, without recourse"). The Allonge to Note also

---

[1] An "allonge [is]…[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Black's Law Dictionary* 88 (9th ed. 2009).

[2] The Court assumes, and the parties do not contend otherwise, that at the time of the indorsement Mr. Wilhelm was President of Profolio.

2

contains an undated blank indorsement from Ohio Savings Bank which states "PAY TO THE ORDER OF," signed by Authorized Agent Christian Flowers.[3] *Id.* MTGLQ allegedly possesses the Note at this time. *Id.* at 2, ¶ 7.

The Note details the "Maturity Date" for the loan is March 1, 2037. *Id.* at 8. The Note also states, "[i]f I am in default, the Note Holder may send me written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount." *Id.* at 9. The date in the notice requiring full payment of the principal and accrued interest "must be at least 30 days after the date on which the notice is mailed to me or delivered by other means." *Id.* The Note defines default status: "[i]f I do not pay the full amount of each monthly payment on the date it is due, I will be in default." *Id.*

Profolio secured the Note with a Mortgage on the purchased real property. *Id.* at 12-28. The Mortgage names Mortgage Electronic Registration Systems, Inc. ("MERS") as a nominee for Profolio and its "successors and assigns." *Id.* at 12. MERS is also named as the mortgagee. *Id.* The Mortgage was recorded with the Bernalillo County Clerk on March 20, 2007. *Id.*; *id.* at 3, ¶ 11.

MTGLQ alleges that MERS erroneously released the Mortgage, as recorded on November 1, 2012. *Id.* at 3, ¶ 12. MTGLQ also alleges that MERS erroneously assigned the Mortgage to JPMorgan Chase Bank, N.A., as recorded on November 13, 2012. *Id.* at 3, ¶ 13.

On February 19, 2016, MERS, through Assignment of Mortgage, assigned the Mortgage to MTGLQ. *Id.* at 45-47. This assignment was recorded on March 2, 2016, with the Bernalillo

---

[3] The Court also assumes, and the parties do not suggest otherwise, that at the time of the indorsement Ms. Flowers was an Authorized Agent for Ohio Savings Bank.

County Clerk. *Id.* The Mortgage was re-recorded with the Bernalillo County Clerk on September 27, 2016, to correct the legal description of the property. *Id.* at 3, ¶ 11; *id.* at 29-44.

On January 25, 2017, MTGLQ filed its "Complaint for Debt and Money Due and for Foreclosure" ("Complaint") in the Second Judicial District Court, County of Bernalillo, State of New Mexico against Ms. Wellington and others. *Id.* at 1. In Count I, MTGLQ seeks damages from Ms. Wellington under the Note. *Id.* at 2, ¶ 7. MTGLQ attached copies of the Note, Allonge to Note, Mortgage, and Assignment of Mortgage to its Complaint. *Id.* at 8-47. MTGLQ alleges Ms. Wellington last paid on the Note on February 1, 2011, and that she has been in default for failure to make payments thereafter. *Id.* at 2, ¶ 8. MTGLQ also alleges that it provided Ms. Wellington notice of her default, demanding payment. *Id.* MTGLQ does not allege specifically when it provided Ms. Wellington with notice of default or the date certain for payment in the notice. *Id.* Because Ms. Wellington failed to cure her default, MTGLQ elected to make the entire remaining principal with accrued interest due and payable. *Id.*

In Count II of its Complaint, MTGLQ seeks foreclosure on the Mortgage. *Id.* at 2-5, ¶¶ 10-21. MTGLQ alleges that Altura Village Homeowners' Association, Inc., JP Morgan Chase Bank, N.A., and the "Unknown Spouse of Monica L. Wellington" ("Unknown Spouse") may individually claim an interest in the property. *Id.* at 4-5, ¶¶ 19-21. On April 26, 2017, Ms. Wellington removed this case to this Court. (Doc. 1) at 1.

II.     *Standard of Review*

When ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to

relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. Discussion

Ms. Wellington raises three significant issues in her Motion to Dismiss Complaint. First, she argues that MTGLQ lacks standing to pursue a personal judgment on the Note or foreclose on the Mortgage. (Doc. 9) at 5-9. Ms. Wellington supports her argument by asserting that the documents attached to the Complaint are either altered, fabricated, or inauthentic and, therefore, MTGLQ should be sanctioned with dismissal of its claims. *Id.* at 5. Further, she contends that MTGLQ's allegations that MERS erroneously released or assigned the Mortgage are insufficient to state a claim for fraud under Fed. R. Civ. P. 9(b). *Id.* at 6. Second, she argues that Count I of MTGLQ's Complaint is barred by the California statute of limitations. *Id.* at 11-13. Third, Ms. Wellington argues that the Court should dismiss the Unknown Spouse from this case. For the reasons explained below, these arguments fail to show why MTGLQ's Complaint should be dismissed or why the Unknown Spouse should be dismissed.

A. *MTGLQ's Standing to Enforce the Note and Foreclose the Mortgage*

*1. Standing at the Time of the Filing of the Complaint*

"[S]tanding [is] established at the time of filing in mortgage foreclosure actions." *Deutsche Bank National Trust Co. v. Johnston* 2016-NMSC-013, ¶ 21, 369 P.3d 1046[4] ("This procedural safeguard is vital because the securitization of mortgages has given rise to a pervasive failure among mortgage holders to comply with the technical requirements underlying the transfer of promissory notes, and more generally the recording of interests in property."); *see also Phoenix Funding, LLC v. Aurora Loan Services, LLC*, 2017-NMSC-010, ¶¶ 18-22, 390 P.3d 174 (explaining in actions to enforce promissory note and foreclose on mortgage, standing is prudential concern and not jurisdictional prerequisite). In foreclosure cases and when standing is an issue,

> a company claiming to be a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint or producing a note dated before the filing of the complaint at some appropriate time in the litigation.

*Deutsche Bank*, 2016-NMSC-013, ¶ 23. Depending on the stage of litigation, the proof required to show a right to enforce a promissory note will vary. For example, "a bare statement that the

---

[4] To determine standing in a diversity case,

> [a] federal district court must look to the substantive law of the state in which it is located to determine whether a complainant is the real party in interest. 3A Moore's Federal Practice ¶ 17.07 (1984). Whether a complainant is the real party in interest under state law is generally resolved by inquiring whether he or she has standing under state law. *See, e.g., American Nat. Bank & Trust Co. v. Weyerhauser Co.,* 692 F.2d 455, 459 (7th Cir. 1982); *Dubuque Stone Products Co., v. Fred T. Gray Co.*, 356 F.2d 718, 723-24 (8th Cir. 1966). In order to have standing under Colorado law, as the district court recognized, a complainant must have suffered "injury in fact to an interest which, as a matter of law, is entitled to protection…." *Cloverleaf Kennel Club, Inc. v. Colo. Racing Com'n*, 620 P.2d 1051, 1057 (Colo. 1980).

*Swanson v. Bixler*, 750 F.2d 810, 813-14 (10th Cir. 1984).

plaintiff holds the note may satisfy pleading standards." *Id.* at ¶ 26. On the other hand, when a defendant raises a lack of standing at the summary judgment stage or trial, "the plaintiff must then prove that it held the note *at the time of filing*." *Id.* at ¶¶ 25, 27 (stating that if the plaintiff in *Deutsche Bank* would have "presented a note indorsed in blank with its initial complaint, it would be entitled to a presumption that it could enforce the note at the time of filing and thereby establish standing.").

"[A] party seeking to foreclose is 'required to demonstrate under [the Uniform Commercial Code ("UCC")] that it had standing to bring a foreclosure action at the time it filed suit.'" *PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 19 (quoting *Bank of New York v. Romero*, 2014-NMSC-007, ¶ 17 *abrogated on other grounds by Deutsche Bank*, 2016-NMSC-013). Under the UCC, a person is entitled to enforce an instrument like a promissory note if she is "the holder of the instrument." NMSA 1978, § 55-3-301 (Cum. Supp. 2015); *see also Deutsche Bank*, 2016-NMSC-013, ¶ 14. The holder of an instrument is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." NMSA 1978, § 55-1-201(b)(21)(A) (Cum. Supp. 2015). The bearer is "a person in possession of a negotiable instrument…that is payable to bearer or indorsed in blank." *Id.* at § 55-1-201(b)(5).

"If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to the bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a 'special indorsement.'" NMSA 1978, § 55-3-205(a) (Cum. Supp. 2015). "When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person." *Id.* Alternatively,

> [i]f an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement'. When indorsed in blank, an instrument

7

> becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

*Id.* at § 55-3-205(b).

The Court determines that MTGLQ has shown standing to enforce the Note by attaching to the Complaint a copy of Ms. Wellington's Note and Allonge. *See* (Doc. 1-1) at 11. The Allonge contains two indorsements. *Id.* First, the Allonge contains a special indorsement from Profolio to Ohio Savings Bank, completed by President Baron Wilhelm. Second, the Allonge contains an indorsement in blank from Ohio Savings Bank completed by Authorized Agent Christian Flowers. The Court finds that MTGLQ is a holder of the Note by virtue of the blank indorsement, so it is entitled to enforce the Note.

Furthermore, the Court concludes that the indorsement in blank from Ohio is the most recent indorsement. *See HSBC Mortgage Services, Inc. v. Martinez*, 2015 WL 11089504, at *3 (D.N.M.) ("the Court recognizes that the special indorsement occurred before the blank indorsement and that because of this sequence of indorsements, the blank indorsement controls who is the holder of the Note.") The Court reaches this conclusion because Profolio, Ms. Wellington's lender and original note holder, clearly specially indorsed the Note to Ohio Savings Bank. This special indorsement was only negotiable by Ohio Savings Bank, which could assign and transfer it as it pleased, which it did by creating the indorsement in blank. The blank indorsement allowed the Note to become enforceable by whoever held it. MTGLQ is in possession of the Note and so it is entitled to enforce the Note. Consequently, MTGLQ meets the standing requirement to enforce the Note and to foreclose on the Mortgage. The Court, accordingly, denies Ms. Wellington's motion to dismiss the Complaint for lack of standing.

*2. Altered or Fabricated Documents*

Ms. Wellington alleges the Note, Mortgage, and Assignment of Mortgage "have been tampered with and altered, if not fabricated." (Doc. 9) at 5. Ms. Wellington further alleges that redactions and markings on the documents demonstrate they are suspect. Ms. Wellington cites *Garcia v. Berkshire Life Insurance Co. of America*, to contend a party's claims may be dismissed with prejudice for the use or presentation of altered or fabricated documents. *Id.* (citing *Garcia*, 569 F.3d 1174 (10th Cir. 2009)). In *Garcia*, the Tenth Circuit held that the district court did not abuse its discretion when it dismissed with prejudice a plaintiff's case because the plaintiff had submitted at least four falsified documents during discovery. 569 F.3d at 1177-82. *Garcia* does not apply here, however, because there is no basis, other than a general allegation, to believe that the Note, Mortgage, or Assignment of Mortgage have been altered or fabricated.

As MTGLQ explains, the documents have redactions to protect personal identifier information in the documents. (Doc. 18) at 4-5; *see also* (Doc. 8) at 8-9. MTGLQ redacted portions of the documents pursuant to Rule 1-079 NMRA. At the time of the filing of MTGLQ's Complaint, Rule 1-079D(1) stated, in relevant part, "[t]he court and the parties shall avoid including protected personal identifier information in court records unless deemed necessary for the effective operation of the court's judicial function." Further, under Rule 1-079B(3) "'protected personal identifier information' means all but the last four (4) digits of a social security number, taxpayer-identification number, financial account number, or driver's license number, and all but the year of a person's date of birth."

Ms. Wellington further argues the Court cannot consider the documents attached to the Complaint because she disputes their authenticity. Ms. Wellington cites *Jacobsen v. Deseret Book Co.* to contend this Court can only consider documents "if they are central to the plaintiff's

9

claim and the parties do not dispute the documents' authenticity." (Doc. 27) at 5 (citing *Jacobsen*, 287 F.3d 936, 941 (10th Cir. 2002)). In *Jacobsen*, the Tenth Circuit noted that the plaintiff's complaint referenced two written works that the parties invited the district court to consider. 287 F.3d at 941. But in the context of determining standing in foreclosure cases, the Court can consider documents attached to a foreclosing plaintiff's complaint, which necessarily are copies. *See Deutsche Bank*, 2016-NMSC-013, ¶ 25 (noting plaintiff "would be entitled to a presumption that it could enforce the note at the time of filing and thereby establish standing," if it presented indorsed in blank note with complaint); *cf. HSBC Mortgage Services, Inc.*, 2015 WL 11089504, at *1-4 (considering attached copies of note and mortgage to complaint in determining whether plaintiff lacked standing to bring foreclosure action). Furthermore, Ms. Wellington fails to create a genuine issue relating to the attached documents' authenticity. *See* Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."). Ms. Wellington's authenticity arguments fails.

*3. Ms. Wellington's Argument Regarding Fed. R. Civ. P. 9(b)*

Ms. Wellington argues MTGLQ's allegations that MERS erroneously released and assigned the Mortgage fail to meet the pleading requirements of Rule 9(b). This rule provides in part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Ms. Wellington argues that MTGLQ fails to plead with particularity the circumstances constituting fraud or mistake and that MTGLQ fails to support with facts its allegations that MERS erroneously released and erroneously assigned the Mortgage.

The Court concludes that Rule 9(b) does not apply to MTGLQ's allegations, or to any aspect of this case. Rule 9(b) is limited to claims of fraud and mistake, which MTGLQ has not plead. *But see U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-728 (10th Cir. 2006) (applying Rule 9(b) heightened pleading standard to plaintiff's False Claims Act claim alleging fraudulent activity by Medicare carrier). Instead, MTGLQ alleges that MERS erred in handling the Mortgage, not that MERS or any other financial institution or party acted fraudulently. Therefore, Rule 9(b) and its heightened pleading standard do not apply to MTGLQ's Complaint.

### B. Statute of Limitations Regarding Personal Judgment Action

Ms. Wellington also argues Count I of MTGLQ's Complaint is barred by the California statute of limitations. Ms. Wellington further argues that Cal. Civ. Proc. § 337(1) applies, which allows four years for a party to bring a money judgment action for balance due under an obligation secured by a mortgage or deed of trust. MTGLQ, however, argues that NMSA 1978, Section 37-1-3 (Cum. Supp. 2015) and NMSA 1978, Section 55-3-118 (Cum. Supp. 2015) apply, both of which allow six years to file a claim under a promissory note. To decide this dispute, the Court must determine whether the California or New Mexico statute of limitation applies.

"Federal courts apply the choice of law rules of their forum states." *Carl Kelley Const. LLC v. Danco Technologies*, 656 F. Supp. 2d 1323, 1337 (D.N.M. 2009) (*citing Memorial Hosp. of Laramie County v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007)). Furthermore, a federal court sitting in diversity, as in this case, should apply the statute of limitations of the forum state. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) ("Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences

11

that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law."); *see also Dow Chemical Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 483-484 (10th Cir. 1990) ("A federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state…even when the action is brought under the law of a different state."). Hence, the Court applies New Mexico law on statute of limitations.

In New Mexico, statutes of limitations are procedural rules generally requiring New Mexico courts to apply New Mexico statutes of limitations. *See Sierra Life Ins. Co. v. First Nat'l Life Ins.*, 1973-NMSC-079, ¶ 14, 85 N.M. 409 ("The trial court properly ruled that under New Mexico law statutes of limitations are procedural and that the law of the forum governs matters of procedure."); *see also Nez v. Forney*, 1989-NMSC-074, ¶ 8, 109 N.M. 161 (holding that choice of law provision in contract designating Texas law failed to specify statute of limitations or time to sue—limitations considered remedial—and, therefore, provision only applied to substantive matters not including statute of limitations). The Court observes that the "applicable statute of limitations [in New Mexico,] on actions involving promissory notes is six years." *Lea County State Bank v. Markum Ranch P'ship*, 2015-NMCA-026, ¶ 11 (citing § 37-1-3(A)). Put another way, Section 37-1-3(A) applies to this case.

The Court next determines when the statute of limitations began to run. Section 37-1-3(A) provides:

> If the payee of any…promissory note…enters into any contract or agreement in writing to deter the payment thereof, or contracts or agrees not to assert any claim against payor or against the assets of the payor until the happening of some contingency, the time during the period from the execution of the contract or agreement and the happening of the contingency shall not be included in computing the six-year period of limitation.

Aside from the maturity date, MTGLQ had the option of accelerating payment of the remaining principal and interest accrued if Ms. Wellington defaulted on her monthly payments. Significantly, the Note's option language includes,

> If I [Ms. Wellington] am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all interest that I owe on that amount.

(Doc. 1-1) at 9. Furthermore, the certain date must be 30 days after the date the notice is mailed or delivered by other means. *Id.* Here, MTGLQ alleges it provided a notice of default to Ms. Wellington but it does not allege when it provided that notice to Ms. Wellington or whether the notice specified a payment date.

Nevertheless, viewing the Complaint in the light most favorable to MTGLQ, the personal judgment action under the Note was filed within the applicable six-year statute of limitations. MTGLQ alleged Ms. Wellington defaulted on the Note after her last payment on February 1, 2011. MTGLQ then provided notice to Ms. Wellington of her default status and after she failed to cure the default, it sought the entire remaining principal with accrued interest. While MTGLQ does not specify when it provided the notice of default, any notice would have been provided after default, which at the earliest was in or about March 2011. Thus, a claim could not be filed until the acceleration date specified in the notice passed or thirty days after the date the notice was mailed or otherwise delivered to Ms. Wellington. *See Welty v. Western Bank of Las Cruces*, 1987-NMSC-066, ¶ 9, 106 N.M. 126 ("We hold that…no action on the contracts was possible until thirty days after a notice of default.").

It follows that Ms. Wellington could not have defaulted on her loan or be provided with notice of default until after March 2011. Consequently, the Note Holder in 2011 could not pursue a claim until 30 days later, after April 2011, at the earliest. Thus, MTGLQ met the statute

13

of limitations, filing its Complaint on January 25, 2017, within six years of the earliest possible accelerated payment date in April 2011. Accordingly, Ms. Wellington's motion to dismiss Count I of MTGLQ's Complaint on the basis of statute of limitations is denied.

### C. Ms. Wellington's Argument for the Dismissal of Unknown Spouse

Ms. Wellington argues that the Unknown Spouse should be dismissed because MTGLQ fails to allege any facts to support its allegation that the Unknown Spouse may claim an interest in the property at issue. (Doc. 9) at 13. The Court will deny Ms. Wellington's request because she may not, as a *pro se* party, represent another party or pursue dismissal on the Unknown Spouse's behalf. *See, e.g.*, *Trustees of the Colorado Cement Masons' Pension Trust Fund v. Pellegrini*, 2005 WL 1586565, at *1 (D. Colo.) ("As a *pro se* party, Janet Pellegrini may respond to claims against her, but she may not file motions or seek relief on behalf of another party.").

### IV. Conclusion

MTGLQ has standing to pursue a personal judgment under the Note and to foreclose on the Mortgage. Additionally, the personal judgment action is not barred under the New Mexico statutes of limitation. Finally, Ms. Wellington cannot move to dismiss the Unknown Spouse. For all the above reasons, the Court denies the Motion to Dismiss Complaint.

IT IS ORDERED that Ms. Wellington's Motion to Dismiss Complaint (Doc. 9) is denied.

_____
UNITED STATES DISTRICT JUDGE