IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MTGLQ INVESTORS, LP,

    Plaintiff,

v.                                                                                            No. 1:17-cv-00487-KG-LF

MONICA L. WELLINGTON, THE MONICA L.
WELLINGTON DECLARATION OF TRUST
DATED DECEMBER 28, 2007, ALTURA VILLAGE
HOMEOWNERS' ASSOCIATION, INC., JPMORGAN
CHASE BANK, N.A., AND THE UNKNOWN SPOUSE
OF MONICA L. WELLINGTON,

    Defendants,

and

MONICA L. WELLINGTON,

    Counter-Claimant,

v.

MTGLQ INVESTORS, LP,

    Counter-Defendant,

and

MONICA L. WELLINGTON,

    Cross-Claimant,

v.

JPMORGAN CHASE BANK, N.A.,

    Cross-Defendant,

and

MONICA L. WELLINGTON,

Third-Party Plaintiff,

v.

WEINSTEIN & RILEY, P.S., ELIZABETH V.
FRIEDENSTEIN, RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

    Third-Party Defendants.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on MTGLQ Investors, LP ("MTGLQ"), Rushmore Loan Management Services, LLC ("Rushmore"), and Weinstein & Riley, P.S. and Elizabeth V. Friedenstein's (collectively, "Law Firm") "Plaintiff/Counterdefendant's and Third Party Defendant's Renewed Motions to Dismiss Amended Counterclaims" ("Motion to Dismiss Amended Counterclaim"), filed on July 11, 2017.[1] *See* (Doc. 24). The Motion to Dismiss Amended Counterclaim incorporates by reference two others motions to dismiss. (Docs. 8 and 11). All of the motions to dismiss are completely briefed and ready for ruling. (Docs. 13, 20, 31, and 34).

The Court conducted a hearing on March 28, 2018, in which it briefly explained its reasons for granting these motions. That same day, the Court entered an Order noting its

---

[1] Rushmore and Law Firm refer to themselves as third-party Defendants. *See, e.g.*, (Doc. 24) at 1. A third-party defendant refers to an individual sued by a defendant because she "may be liable to [the defendant] for all or part of the claim against [the defendant]." Fed. R. Civ. P. 14(a)(1). Ms. Wellington's counterclaims, however, do not allege that Rushmore or Law Firm are liable to her for all or part of the claim by MTGLQ against her. Therefore, neither Rushmore nor Law Firm are true third-party defendants. MTGLQ is a counter-defendant as Ms. Wellington alleges a claim against it as an opposing party. *See* Fed. R. Civ. P. 13(a)(1), 13(b). Finally, JPMorgan Chase Bank, N.A. ("JP Morgan Chase"), is a Cross-Defendant because Ms. Wellington's declaratory judgment claim both "arises out of the transaction or occurrence that is the subject matter of the original action" and "relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g).

tentative ruling. (Doc. 69). This Memorandum Opinion and Order constitutes the full written opinion mentioned at the hearing and in the Order.

I. Background

On January 25, 2017, MTGLQ filed its "Complaint for Debt and Money Due and for Foreclosure" ("Complaint"), in the Second Judicial District Court in the County of Bernalillo, State of New Mexico. (Doc. 1-1) at 1-50. In its Complaint, MTGLQ pleaded two causes of action, "Debt and Money Due" ("Count I") against Ms. Wellington, and "Foreclosure" ("Count II") against Ms. Wellington, Altura Village Homeowners' Association, Inc., JPMorgan Chase, and the Unknown Spouse of Monica L. Wellington. *Id.* at 1-6. MTGLQ seeks foreclosure of property "commonly described as 2124 Altura Verde Ln NE, Albuquerque, NM 87110." *Id.* at 3, ¶ 11. MTGLQ also requests an "*in personam* judgment against" Ms. Wellington. *Id.* at 5. MTGLQ attached several exhibits to its Complaint: a copy of the promissory note executed by Ms. Wellington, copies of the mortgage and re-recorded mortgage, and the assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") to MTGLQ. *Id.* at 8-47.

On May 21, 2017, Monica L. Wellington filed "Counterclaim of Monica L. Wellington" ("Counterclaim"), against MTGLQ, Law Firm, Rushmore, Profolio Home Mortgage Corporation ("Profolio"), and JPMorgan Chase. In her Counterclaim, Ms. Wellington alleges various violations of the Fair Debt Collection Practices Act ("FDCPA") against MTGLQ, Rushmore, and Law Firm. *See* 15 U.S.C. §§ 1692e, 1692f(1), 1692g(b), 1692i; *see also* (Doc. 6) at 3-14, ¶¶ 9-76 (First Cause of Action through Thirteenth Cause of Action). Ms. Wellington also pleads a declaratory judgment claim against Profolio, JPMorgan Chase, and MTGLQ. *Id.* at 14, ¶¶ 77-81 (Fourteenth Cause of Action). Ms. Wellington alleges that neither MTGLQ nor JPMorgan

Chase received a "legitimate assignment" of the note or mortgage, and that along with Profolio none of them can pursue a claim against her or the property. *Id.*

On June 9, 2017, MTGLQ and Rushmore filed "Plaintiff/CounterDefendant's Motion to Dismiss Counterclaims" ("MTGLQ and Rushmore's Motion to Dismiss Counterclaim") (Doc. 8). On June 26, 2017, Law Firm filed "Third Party Defendants Weinstein & Riley, P.S. and Elizabeth V. Friedenstein's Motion to Dismiss Counterclaims" ("Law Firm's Motion to Dismiss Counterclaim") (Doc. 11). Law Firm's Motion to Dismiss Counterclaim is identical to MTGLQ and Rushmore's Motion to Dismiss Counterclaim, with the exception of the parties bringing the motion. *Compare* (Doc. 8), *with* (Doc. 11).

On June 27, 2017, Ms. Wellington filed "First Amended Counterclaim of Monica L. Wellington" ("Amended Counterclaim"). In her Amended Counterclaim, Ms. Wellington alleges the same thirteen violations in her Counterclaim, adding a violation of 15 U.S.C. § 1692e by Law Firm in the Eighth Cause of Action. *See* (Doc. 12) at 3-15, ¶¶ 8-80. Additionally, Ms. Wellington drops her declaratory judgment claim against Profolio. *Id.* at 15, ¶¶ 81-85.

Also on June 27, 2017, Ms. Wellington filed a response to the motions to dismiss and on July 11, 2017, MTGLQ, Rushmore, and Law Firm filed a reply to that response. (Docs. 13 and 20). On July 11, 2017, MTGLQ, Rushmore, and Law Firm filed their Motion to Dismiss Amended Counterclaim. (Doc. 24). On July 25, 2017, Ms. Wellington responded to that motion to dismiss, and, on August 8, 2017, MTGLQ, Rushmore, and Law Firm filed a reply. (Docs. 31 and 34).

II. *Standard of Review*

In ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See*

*Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)). Nonetheless, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Bellmon*, 935 F.2d at 1110. For instance, the Court "will not supply additional facts, nor will [it] construct a legal theory for [a *pro se*] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (*per curiam*).

III. *Discussion*

MTGLQ, Rushmore, and Law Firm raise substantive arguments regarding whether Ms. Wellington states a claim for relief. In addition, they and Ms. Wellington raise procedural issues. The Court will consider these procedural issues before turning to whether Ms. Wellington failed to state a claim for relief under Rule 12(b)(6).

*A. The Procedural Issues*

In their Motion to Dismiss the Amended Counterclaim, MTGLQ, Rushmore, and Law Firm argue that Ms. Wellington failed to obtain leave of court to amend her Counterclaim. (Doc. 24) at 1. They argue that Ms. Wellington did not comply with Fed. R. Civ. P. 15(a)(2). They fail, however, to explain why Rule 15(a)(2) applies here. Ms. Wellington, on the other hand, correctly points out that under Rule 15(a)(1)(B), a party may amend her pleading "once as a matter of course…if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)…."

Under Rule 15(a)(1)(B), Ms. Wellington had 21 days to amend her Counterclaim from the filing of MTGLQ and Rushmore's Motion to Dismiss Counterclaim (Doc. 8). MTGLQ and Rushmore filed their Motion to Dismiss Counterclaim on June 9, 2017. Thus, Ms. Wellington had until June 30, 2017, to amend her Counterclaim as a matter of course. Ms. Wellington met this time limit by filing her Amended Counterclaim on June 27, 2017.

Next, the Court turns to Ms. Wellington's argument that the Motion to Dismiss Amended Counterclaim should be stricken. (Doc. 31) at 2. Ms. Wellington argues that MTGLQ, Rushmore, and Law Firm misuse D.N.M.LR-Civ. 7.1(a) in their Motion to Dismiss Amended Counterclaim. In that motion they incorporate by reference their arguments in MTGLQ and Rushmore's Motion to Dismiss Counterclaim, Law Firm's Motion to Dismiss Counterclaim, and the reply to the motions to dismiss under Local Rule 7.1(a). *See* (Doc. 24) at 2. Ms. Wellington points to Local Rule 7.1(a), which provides in relevant part, "[a] party may adopt by reference another party's motion or other paper by making specific reference to the filing date and docket number of such motion or other paper." Ms. Wellington asserts that because Local Rule 7.1(a)

limits reference to "another party's motion or other paper," MTGLQ, Rushmore, and Law Firm cannot incorporate their own arguments from earlier filings.

The Court recognizes that such a reading of the rule is technically correct, but in the interests of justice parties should be allowed to incorporate by reference arguments made in their earlier filings. *See* D.N.M.LR-Civ. 1.7 ("These rules may be waived by a Judge to avoid injustice."). Therefore, the Court will consider the Motion to Dismiss Amended Counterclaim to incorporate the arguments made by MTGLQ, Rushmore, and Law Firm in their earlier briefing.

The final procedural issue before the Court is MTGLQ and Rushmore's argument that Ms. Wellington's Response to their Motion to Dismiss Counterclaim was untimely and, therefore, constitutes consent to grant their motion. *See* (Doc. 20) at 2. MTGLQ and Rushmore point to Local Rule 7.1(b), which states, in relevant part, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." MTGLQ and Rushmore filed and served their Motion to Dismiss Counterclaim on Ms. Wellington on June 9, 2017. Under Local Rule 7.4(a), "[a] response must be served and filed within fourteen (14) calendar days after service of the motion." Ms. Wellington did not file her response until June 27, 2017, 18 days after MTGLQ and Rushmore served Ms. Wellington with their Motion to Dismiss Counterclaim. Thus, Ms. Wellington did not meet the 14-day time limit under Local Rule 7.4(a). A strict reading of Local Rule 7.1(b) would require this Court to construe Ms. Wellington's failure to respond in time as consent to grant MTGLQ and Rushmore's Motion to Dismiss Counterclaim.

The Court, however, recognizes the dispositive nature of a Rule 12(b)(6) motion to dismiss, and will not grant such a motion on "procedural defaults alone." *Tapia v. City of Albuquerque*, 2014 WL 1285647, at *18 (D.N.M.) (discussing Local Rule 7.1(b) and noting

instances of failure to meet time limits or failure to respond altogether does not relieve Court from considering merits of motion to dismiss or motion for summary judgment). Furthermore, as the Tenth Circuit noted in *Issa v. Comp USA*,

> a district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response…[t]his is consistent with the purpose of [Fed. R. Civ. P.] 12(b)(6) motions as the purpose of such motions is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.

354 F.3d 1174, 1177 (10th Cir. 2003) (internal quotation marks and citations omitted). Therefore, the Court declines to grant MTGLQ and Rushmore's Motion to Dismiss Counterclaim solely on the basis Ms. Wellington did not file her response in time.

### B. The Substantive Arguments

#### 1. Ms. Wellington's FDCPA Claims

MTGLQ, Rushmore, and Law Firm offer two threshold arguments against the applicability of the Fair Debt Collection Practices Act to them and their actions. First, they argue that the FDCPA does not apply to foreclosure proceedings. *See* (Doc. 8) at 7; (Doc. 11) at 6-7. Second, they argue that even if the FDCPA does apply to foreclosure proceedings, they are not "debt collectors" as defined under the FDCPA. (Doc. 20) at 2-3; (Doc. 34) at 3-6. Because of the threshold nature of these arguments, the Court will begin its discussion there.

MTGLQ and Rushmore rely on *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 461 (11th Cir. 2009) to assert "[a] foreclosure action…is not an attempt to collect a debt under the FDCPA." *See* (Doc. 8) at 7. This court declines to apply *Warren* here for at least two reasons. First, it is not binding or persuasive on this Court. Second, and more importantly, it would seem *Warren* no longer is binding in the Eleventh Circuit either. *Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp. 2d 1194, 1200-1201 (N.D. Ala. 2013) (citing *Reese v. Ellis,*

8

*Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), and stating "the *Warren* rule has been undermined, if not overturned, by two subsequent Eleventh Circuit opinions, including one that is published"); *see also Birster v. Am. Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579 (11th Cir 2012)) (explaining "so long as [plaintiff/counter-defendant] was attempting to collect a debt, it is subject to the FDCPA guidelines, regardless of whether it was simultaneously enforcing a security interest").

Moreover, courts in this circuit have held that the FDCPA applies to judicial foreclosure proceedings. *See, e.g.*, *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1221-1222 (10th Cir.) (noting "judicial mortgage foreclosures may be covered under the FDCPA because of the underlying deficiency judgment…[while] a non-judicial foreclosure proceeding is not covered"); *Maynard v. Cannon*, 401 Fed. Appx. 389, 394 (10th Cir. 2010) (defining judicial foreclosure proceeding as including "the presence…of a personal judgment against the mortgagor"); *McDaniel v. South & Associates, P.C.*, 325 F. Supp. 2d 1210, 1218 (D. Kan. 2004) ("The court holds that [defendant's] action in filing a judicial foreclosure proceeding against [plaintiff] amounted to debt collection activity under the FDCPA."). Alternatively, "a non-judicial foreclosure does not result in a mortgagor's obligation *to pay money*—it merely results in the sale of the property subject to a deed of trust." *Maynard*, 401 Fed.Appx. 394 (emphasis in original).

MTGLQ is seeking relief under two causes of action—"Debt and Money Due" and "Foreclosure." (Doc. 1-1) at 1-5, ¶¶ 1-21. Under Count I, MTGLQ seeks a personal judgment "for the full outstanding and unpaid amount of the Note, together with any and all interest, attorneys fees [sic] and costs." (Doc. 1-1) at 4, ¶ 9. Thus, MTGLQ is engaged in a judicial foreclosure proceeding because it is seeking a personal judgment against Ms. Wellington. Therefore, the FDCPA applies to this judicial foreclosure proceeding.

9

The Court next turns to whether Ms. Wellington has alleged sufficient facts to plausibly show that MTGLQ, Rushmore, and Law Firm are debt collectors under the FDCPA. *Montoya v. O'Friel*, 2017 WL 5891757, at *6 (D.N.M.) (noting "quotations from the statutory definition are insufficient to satisfy the [12(b)(6)] pleading requirement for FDCPA claims."). There are two primary definitions of "debt collector" under the FDCPA. *See* 15 U.S.C. § 1692a(6). First, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." *Id.*; *see also Skinner v. LVNV Funding, LLC*, 2018 WL 319320, at *2-3 (N.D. Ill.) (labeling first definition under Section 1692a(6) the "principal purpose" definition). Second, a debt collector is "[any person] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also Skinner*, 2018 WL 319320, at *2-3 (labeling second definition under Section 1692a(6) the "regularly collects" definition).

However, there is little guidance in the FDCPA or controlling precedent to define "principal purpose." The Court, nonetheless, finds guidance from the Northern District of Illinois, specifically, *Hunte v. Safeguard Props. Mgmt., LLC*, 255 F. Supp. 3d 722 (N.D. Ill. 2017). In *Hunte*, the Northern District stated, "Congress's use of the definite article, to modify 'principal purpose' means that Congress intended to cover only entities having one principal purpose." *Id.* at 726. Following that reasoning, this Court would agree a party will not be considered a debt collector if debt collections is only part of that party's business. *See Schlaf v. Safeguard Properties, LLC*, 2017 WL 4856227, at *3 (N.D. Ill.) (citing *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1317 (11th Cir. 2015), and stating "[a] party will not be considered a debt collector under the principle [sic] purpose definition if collection of debts is merely some of that party's business"). "Similarly, a company cannot avoid debt collector status

under the FDCPA by conducting some business that is not debt collection." *Skinner*, 2018 WL 319320, at *3 (citing *Simpson v. Safeguard Props., LLC*, 2017 WL 4310674, at *5). To determine whether a business' principal purpose is debt collection, the court in *Skinner* suggests considering "what proportion or percentage of a company's operations involves debt collection activities." *Id.* (citations omitted).

The Court next considers whether a party "regularly collects" debts. In *Henson v. Santander Consumer USA Inc.*, the Supreme Court confronted "how to classify individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account." 137 S.Ct. 1718, 1721 (2017). The Court noted the regularly collects definition "seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." *Id.* at 1721. The Court explained the definition does not "appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase." *Id*. The inquiry instead is "whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for another." *Id.*

Moreover, the Tenth Circuit has cited five factors and considerations relevant to the regularly collects definition as it relates to lawyers and law firms:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.
>
> Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of

11

> debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*James v. Wadas*, 724 F.3d 1312, 1317-1318 (quoting *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004)).

Ms. Wellington alleges MTGLQ is "a debt collector for other parties, has a principal purpose of debt collection for others, and is seeking to collect a debt claim for another as a result of its complaint against [her]." (Doc. 12) at 2, ¶ 5. But these allegations fail the Rule 12(b)(6) test. The Court finds Ms. Wellington's allegations are mere legal conclusions and are insufficient to plausibly demonstrate MTGLQ is indeed a debt collector under the principal purpose definition. *See Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not [meet the pleading standard under Fed. R. Civ. P. 8]").

Ms. Wellington also alleges MTGLQ seeks to collect a debt claim for another as a result of its Complaint against her. This allegation also fails because it does not sufficiently allege any proportion or percentage of MTGLQ's operations involved in debt collection activities. This allegation similarly amounts to a threadbare recital of the regularly collects definition. First, the allegation does not allege for whom MTGLQ is collecting. Second, the allegation fails to allege facts regarding the frequency of MTGLQ's collection activity, which under the FDCPA must be performed "regularly." Having viewed the Amended Counterclaim in the light most favorable to Ms. Wellington, and for the foregoing reasons, the Court determines that Ms. Wellington has not plausibly alleged that MTGLQ is a debt collector under the FDCPA.

Ms. Wellington also alleges Rushmore "has a principal business of collecting debts, including debt claims acquired after they are in default…[i]t was/is acting on behalf of [MTGLQ] since February 2016, and sought to collect a debt claim after it was in default." (Doc. 12) at 2, ¶ 6. Viewed in the light most favorable to Ms. Wellington, these allegations suggest Rushmore attempted to collect her defaulted debt for MTGLQ. These allegations, nevertheless, fall short of the regularly collects definition because they do not address whether Rushmore regularly engages in debt collection, and they similarly amount to mere legal conclusions. There is no allegation relating to the frequency or the general practice of Rushmore, so the Court cannot reasonably infer from the allegations that Rushmore regularly collects the defaulted debts of others. Therefore, the Court concludes that viewing the Amended Counterclaim in the light most favorable to Ms. Wellington, she fails to allege sufficient facts to plausibly show that Rushmore is a debt collector under the FDCPA.

Ms. Wellington also alleges Weinstein & Riley, P.S., and Ms. Friedenstein, are "debt collector[s] for other parties, [have a principal purpose of debt collection], and [have] filed numerous debt collection claims/actions in recent months seeking to collect debt claims on behalf of others." *Id.* at ¶¶ 3-4. The Court concludes these allegations also amount to mere legal conclusions. For example, Ms. Wellington's allegation that Law Firm acted as debt collectors for other parties and has a principal purpose of debt collection simply restate the regularly collects and principal purpose definitions, respectively. Ms. Wellington fails to allege facts to support these general allegations.

Ms. Wellington's final allegation is that Law Firm has filed numerous debt collection claims in recent months seeking to collect debt claims on behalf of others. At most, the filing of numerous debt collections claims on behalf of others speaks to the regularly collects definition,

13

but similarly fails to allege sufficient facts to show that Law Firm's business brings it within the ambit of the FDCPA.

As noted above, the Court applies the *James* factors to determine under Rule 12(b)(6) whether a lawyer or law firm meets the "regularly conducts" definition for debt collector status. Ms. Wellington's allegations fail to allege sufficient facts to meet any factor. Even viewing the Amended Counterclaim in the light most favorable to Ms. Wellington, the Court concludes she fails to allege sufficient facts to plausibly show that Law Firm is a debt collector under either the principal purpose definition or regularly collects definition of the FDCPA. *Cf. Montoya*, 2017 WL 5891757, at *7 ("In the [complaint], [plaintiff] alleges no facts from which the Court could reasonably infer that [defendants] regularly attempt to collect debts on behalf of clients other than [one particular client]."). Having determined that Ms. Wellington's Amended Counterclaim fails to allege sufficient facts to plausibly show that MTGLQ, Rushmore, or Law Firm are debt collectors under the FDCPA, the Court dismisses the FDCPA claims without prejudice for failure to state a claim under Rule 12(b)(6).

*2. Ms. Wellington's Declaratory Judgment Claim*

Finally Ms. Wellington seeks declaratory judgment against MTGLQ and JPMorgan Chase. (Doc. 12) at 15, ¶¶ 81-85. In her Amended Counterclaim, she "seeks a declaration that neither JPMorgan Chase, nor [MTGLQ] has [sic] any claim against Wellington or the property at issue in this case." (Doc. 12) at 15, ¶ 85. Ms. Wellington bases this request on allegations that there were improper assignments of the promissory note from Profolio to MTGLQ. *Id.* at 6, ¶¶ 26, 28. Further, Ms. Wellington alleges that any claim to the mortgage by MTGLQ is suspect or invalid because Profolio assigned the promissory note to her property to "Ohio Savings Bank on [February 20, 2007]." *Id.* at 6, ¶ 26; *id.* at 10, ¶ 53. Thus, "[MTGLQ] has never received any

14

legitimate assignment of any note or mortgage claim." *Id.* at 15, ¶ 83. In addition to MTGLQ, Ms. Wellington alleges that JPMorgan Chase did not receive a legitimate assignment of the mortgage. *Id.* at 15, ¶ 84. Ms. Wellington alleges that MERS is a foreign corporation under NMSA 1978, § 53-17-20 (Cum. Supp. 2015), and, therefore, it could not assign the mortgage to JPMorgan Chase. *Id.* at 10, ¶ 55. Consequently, JPMorgan Chase cannot enforce its assignment. *Id.* at 15, ¶ 84. The Court finds Ms. Wellington's allegations insufficient.

Generally, a mortgagor "lacks standing to challenge the validity of an assignment or transfer of the property interest or promissory note because the mortgagor…is not a party to any of those transfers." *Long v. Wells Fargo Bank, N.A.*, 2015 WL 1268279, at *3 n.28 (D. Utah); *see, e.g.*, *In re Sandford*, 2012 WL 6012785, at *3 (Bankr. D.N.M.) ("case law is both uniform and abundant…that a borrower lacks standing to challenge the validity of a loan assignment based on alleged noncompliance with a [pooling and servicing agreement ("PSA")], because the borrower is neither a party to the PSA nor a third party beneficiary."). "[T]he general rule in New Mexico and elsewhere is that a mortgage 'follows' the promissory note it secures, so that a subsequent holder of the note can enforce the mortgage even without a formal assignment thereof." *In re Sandford*, 2012 WL 6012785, at *5 (citing *Medler v. Childers*, 1913-NMSC-015, ¶ 9, 17 N.M. 530). The Court interprets *In re Sandford* and *Long* to mean that a mortgagor lacks standing to challenge the assignment of her promissory note or mortgage. The following explanation also is helpful:

> [t]he reason debtors generally lack standing to challenge assignments of their loan documents is that they have no interest in those assignments, and the arguments they usually make do not go to whether the assignments are void *ab initio*, but instead to whether the various assignments are voidable. Debtors lack standing to challenge voidable assignments; only the parties to the assignments may seek to avoid such assignments.

15

*Bateman v. Countrywide Home Loans*, 2012 WL 5593228, at *4 (D. Haw) (citing 29 *Williston on Contracts* § 74:50 (4th ed.)) (noting that Hawai'i District Court "has held on numerous occasions that borrowers like [plaintiff] generally lack standing to challenge the assignments of their loans").

Here, Ms. Wellington's declaratory judgment claim challenges the assignments of her promissory note and mortgage. As noted above, debtors, like Ms. Wellington, lack standing as a matter of law to challenge such assignments. Therefore, the Court dismisses Ms. Wellington's declaratory judgment claim with prejudice, as to both MTGLQ and JPMorgan Chase. *See Long*, 2015 WL 1268279, at *4 (dismissing declaratory judgment claim, along with other claims in attempt to avoid foreclosure, with prejudice).

IV. *Conclusion*

For all the foregoing reasons, the Court grants the Motion to Dismiss Amended Counterclaim and the other motions to dismiss. The Court dismisses Ms. Wellington's FDCPA claims without prejudice for failure to allege sufficient facts to plausibly show MTGLQ, Law Firm, and Rushmore are debt collectors under the FDCPA. The Court also dismisses Ms. Wellington's declaratory judgment claim with prejudice because Ms. Wellington lacks standing to challenge the assignments of her promissory note and mortgage.

IT IS ORDERED that

1. MTGLQ and Rushmore's Motion to Dismiss Counterclaim (Doc. 8) is granted;
2. Law Firm's Motion to Dismiss Counterclaim (Doc. 11) is granted;
3. MTGLQ, Rushmore and Law Firm's Motion to Dismiss Amended Counterclaim (Doc. 24) is granted;

4. the First Cause of Action through the Thirteenth Cause of Action of the Amended Counterclaim will be dismissed without prejudice; and

5. the Fourteenth Cause of Action of the Amended Counterclaim will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE