IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MTGLQ INVESTORS, LP,

    Plaintiff,

vs.                                                            Civ. No. 17-487 KG/LF

MONICA L. WELLINGTON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment, filed November 21, 2018. (Doc. 123). *Pro se* Defendant Monica L. Wellington[1] filed a response on December 7, 2018, and Plaintiff filed a reply on December 18, 2018. (Docs. 135 and 138). Having considered the Motion for Summary Judgment, the accompanying briefing, and the Affidavit in Support of Judgment, (Doc. 123-3) at 3-9, as well as the Complaint for Debt and Money Due and for Foreclosure (Complaint), (Doc. 1-1), and its attached exhibits, the Court grants the Motion for Summary Judgment.

*A. The Complaint*

Plaintiff brings this action to recover amounts due on a Note secured by a Mortgage on a Bernalillo County property purchased by Wellington in February 2007. *See* (Doc. 1-1) at 8. In Count I, Plaintiff seeks a judgment "for the full outstanding and unpaid amount of the Note,

---

[1] On August 21, 2018, the Court entered a stipulated judgment foreclosing the interest of Defendant JPMorgan Chase Bank, N.A. in the property at issue. (Doc. 100). On July 22, 2019, the Court entered default judgments against Defendants The Monica L. Wellington Declaration of Trust Dated December 28, 2007, and Altura Village Homeowners' Association, Inc. also foreclosing the interests of those Defendants in the property at issue. (Doc. 169). Wellington, therefore, remains the sole Defendant in this matter that claims an interest in the subject property.

together with any and all intertest, attorney fees and costs." (Doc. 1-1) at 2, ¶9. In Count II, Plaintiff seeks to foreclose the Mortgage.

Plaintiff attached a copy of the Note, dated February 20, 2007, to the Complaint. The original lender was Profolio Home Mortgage Corporation (Profolio). (Doc. 1-1) at 8. The Note, signed by Wellington, indicates that the principal is $134,500 with a yearly interest rate of 5.750%. *Id.* at 8-10. The Note has attached to it an allonge that contains an indorsement from Profolio payable to the order of Ohio Savings Bank, without recourse. *Id.* at 11. That indorsement was signed by Baron Wilhelm, "President," presumably of Profolio. *Id.* In addition, the allonge contains a blank indorsement from Ohio Savings Bank which states "pay to the order of," without recourse. *Id.* Christian Flowers, "Authorized Agent" for Ohio Savings Bank, signed that indorsement. *Id.*

Plaintiff also attached a copy of the Mortgage, dated February 20, 2007, to the Complaint. Wellington signed the Mortgage, which was recorded in March 2007 in Bernalillo County. *Id.* at 12-28. The Mortgage indicates that Mortgage Electronic Registration Systems, Inc. (MERS) "is acting solely as a nominee" for Profolio and its "successors and assigns." *Id.* at 12. Plaintiff notes that in November 2012 MERS, as nominee for Profolio, "erroneously released" the Mortgage and "erroneously assigned" the Mortgage to JP Morgan Chase Bank, N.A. *Id.* at 3, ¶¶ 12 and 13.

On February 19, 2016, MERS, as nominee for Profolio, assigned the Mortgage to Plaintiff. Plaintiff attached a copy of that Assignment of Mortgage to the Complaint. *Id.* at 45-47. The Assignment of Mortgage was recorded in Bernalillo County in March 2016. *Id.*

Plaintiff alleges that Wellington's last Note payment was applied to the February 1, 2011, scheduled installment. *Id.* at 2, ¶ 8. Furthermore, Plaintiff alleges that the unpaid principal at

that time was $125,049.37. *Id.* Plaintiff contends that Wellington also owes interest on that principal accruing from February 1, 2011, as well as late charges, escrows, and advances as provided by the Note and Mortgage. *Id.*

*B. The Affidavit in Support of Judgment*

Plaintiff submits an affidavit, affirmed under penalty of perjury, by Michael Bennett, an attorney in fact for Plaintiff and assistant vice-president for Rushmore Loan Management Services, LLC (Rushmore). (Doc. 123) at 3, ¶ 1, and at 5. Rushmore services the Note and Mortgage for Plaintiff. Bennett states that "[i]n the regular performance of [his] job functions," he is "familiar with business records" Plaintiff or its agent maintains "for the purpose of servicing mortgage loans." *Id.* at 3, ¶ 1. Bennett attests that "[t]hese records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records…." *Id.* Bennett further attests that he has "personally examined these business records" which "are kept in the course of business activity conducted regularly by Plaintiff or its agent." *Id.* According to Bennett, "[i]t is a regular practice of Plaintiff's or its agent's mortgage servicing business to make these records." *Id.*

Moreover, Bennett states that the copies of the Note and Mortgage attached to the Complaint are true and correct copies. *Id.* at 3-4, ¶¶ 2 and 3. In addition, Bennett attests that as of the date Plaintiff filed its Complaint, "Plaintiff was and is now in possession of" the Note executed by Wellington. *Id.* at 3-4, ¶ 2.

Bennett also states that the Plaintiff is the assignee of the Mortgage and that the copy of the Assignment of Mortgage attached to the Complaint is a true and correct copy. *Id.* at 4, ¶ 3.

3

Bennett notes that the Mortgage was originally recorded in March 2007 in Bernalillo County and then re-recorded in September 2016.² *Id.*

Next, Bennett attests that Wellington is in default on the Note and that in accordance with the Note the unpaid principal of $125,049.37, accrued interest on that principal, corporate advances, and escrow advances are due and payable immediately. *Id.* at 4, ¶¶ 4 and 5. Bennett states that as of November 1, 2018, Wellington owed Plaintiff a total of $199,299.21. *Id.*

Bennett attached Exhibit A to his affidavit, which Bennett attests is "[a] true and correct copy of Plaintiff's business records" he relied upon to calculate the total amount due and owing to Plaintiff. *Id.* at ¶ 6. Those business records list, by date, various fees and costs Plaintiff has incurred with respect to the subject property as well as the outstanding principal balance and interest owed as of November 1, 2018. *Id.* at 6-9.

C. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).³ When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.

---

² The Mortgage was apparently re-recorded in September 2016 to correct the legal description of the property. (Doc. 1-1) at 29.

³ The Court notes that in the Motion for Summary Judgment Plaintiff refers to the New Mexico summary judgment rule, Rule 1-056 NMRA, and New Mexico law. The Court, of course, applies the federal summary judgment rule, Rule 56, and federal law to decide this Motion for Summary Judgment.

*Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

D. Discussion

Plaintiff asserts that the undisputed facts demonstrate that it is entitled to (1) the money Wellington owes under the Note, and (2) foreclose the Mortgage. Wellington, however, attacks the Motion for Summary Judgment on several grounds. The Court addresses Wellington's objections first.

  1. *Wellingtons' Objections*

    a. *Lack of Diversity Jurisdiction*

Once more, Wellington argues that the Court lacks diversity jurisdiction over this matter. The Court, however, has addressed this argument and concluded that it, indeed, has diversity jurisdiction over this matter. *See* (Doc. 165).

    b. *Failure to Comply with Local Rule 7.1(a)*

Wellington argues next that Plaintiff failed to comply with Local Rule 7.1(a) and that the Court, therefore, should summarily deny the Motion for Summary Judgment. Local Rule 7.1(a) requires that a movant make a good faith request for concurrence and provides that a motion "may be summarily denied" for failure to make that request. D.N.M. LR-CV 7.1(a). The Local Rules, however, also provide that a judge can waive a Local Rule "to avoid injustice." D.N.M. LR-CV 1.7; *see also Hernandez v. George,* 793 F.2d 264, 266 (10th Cir.1986) (observing that Tenth Circuit has "recognized that district courts have discretion in applying local rules"). The

Court notes that it prefers to rule on the merits of the Motion for Summary Judgment, and that Wellington would not have concurred in the Motion for Summary Judgment had Plaintiff made a good faith request for concurrence. Hence, to avoid an injustice, the Court will not summarily deny the Motion for Summary Judgment under Local Rule 7.1(a).

### c. Failure to Comply with Rule 56(a)

Wellington further argues that Plaintiff has not complied with Rule 56(a)'s identification of claims requirement. Rule 56(a) states that a party moving for summary judgment must identify "each claim … on which summary judgment is sought." Plaintiff raises two claims in the Complaint: (1) a claim for "debt and money due" on the Note, and (2) a claim to foreclose the Mortgage. (Doc. 1-1). In fact, Plaintiff states in the Motion for Summary Judgment that "[u]nder the terms of the Note and Mortgage, Plaintiff is entitled to judgment against … Wellington for the amount due on the Note and to foreclosure of its lien," i.e. the Mortgage. (Doc. 123) at 7. The Court finds that the above statement satisfies Rule 56(a)'s identification of claims requirement.

### d. Omission of Material Facts

Wellington argues that Plaintiff failed to numerically list, let alone support with evidence, certain "material facts," namely, the factual allegation in the Complaint that MERS "erroneously released" and "erroneously assigned" the Mortgage to JP Morgan Chase Bank, N.A. in November 2012, and then properly assigned the Mortgage to Plaintiff in February 2016. (Doc. 1-1) at 3-4, ¶¶ 12-14; *see also* D.N.M. LR-CV 56.1(b) (requiring that in motion for summary judgment material "facts must be numbered and must refer with particularity to those portions of the record upon which the movant relies").

The Court observes that in August 2018 it entered a Stipulated Judgment Foreclosing the Interest of JP Morgan Chase Bank, N.A. (Stipulated Judgment). (Doc. 100). The Stipulated Judgment states that "JP Morgan Chase Bank, N.A. claims no interest in the Property, through assignment or otherwise…." *Id.* at 1. Wellington, however, challenges the Stipulated Judgment by arguing it cannot bind her because she was not a party to the stipulation and that its legal conclusions are not binding on the Court. (Doc. 135) at 7 n.6. The Court has already addressed Wellington's concerns about the Stipulated Judgment when it denied her motion to vacate the Stipulated Judgment. (Doc. 168). The Stipulated Judgment, therefore, establishes that JP Morgan Chase Bank, N.A. has no interest in the property at issue. Accordingly, the Stipulated Judgment implicitly supports the contention that MERS erroneously assigned the Mortgage to JP Morgan Chase Bank, N.A.

Furthermore, under the Mortgage, MERS had the authority, as Profolio's nominee, to assign the Mortgage to Plaintiff. (Doc. 1-1) at 12; *see also Bank of New York v. Romero*, 2014-NMSC-007, ¶ 35, 320 P.3d 1 (noting that MERS, as nominee on mortgage contract, "could assign the mortgage but lacked any authority to assign" note). Indeed, MERS, through a written assignment, assigned the Mortgage to Plaintiff in February 2016, well after any erroneous assignment of the Mortgage, thereby making Plaintiff the last proper assignee of the Mortgage. Moreover, regardless of the assignment, once Plaintiff established the right to enforce the Note as the holder of the Note, Plaintiff automatically established its right to enforce the Mortgage. *Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶¶ 14 and 22, 356 P.3d 1102 (N.M. Ct. App.), *abrogated on other grounds recognized by PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 18, 377 P.3d 461 (observing that one must hold note to enforce note and "right to foreclose the mortgage automatically follows the right to enforce the note"); *see also* (Docs. 98 and 71). Consequently,

that MERS may have erroneously assigned the Mortgage does not affect the fact that Plaintiff, as holder of the Note, nevertheless, is entitled to foreclose the Mortgage as a matter of law.

The material fact, then, is not what entity is the assignee of the Mortgage, but what entity holds the Note. *See Flagstar Bank, FSB*, 2015-NMCA-086 at ¶ 22 (holding that statements regarding mortgage ownership "were not material" to right to file foreclosure when bank had right to enforce note). Plaintiff specifically states in its numbered Statement of Undisputed Facts that: "Plaintiff is the holder of the Note and Mortgage and is entitled to enforce the subject Note and Mortgage," citing to Bennett's affidavit. (Doc. 123) at 1, ¶ 2. Hence, Wellington's argument that Plaintiff failed to include material facts, supported by the record, in its numbered Statement of Undisputed Facts lacks merit.[4]

### e. Failure to Disclose Bennett as a Witness

Wellington next moves to strike Bennett's affidavit under Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) provides that if a party fails to identify a witness in pretrial and supplemental disclosures, as required by Fed. R. Civ. P. 26(a) or (e), that party cannot use the "witness to supply evidence on a motion … unless the failure was substantially justified or is harmless."

Plaintiff stated in the July 2018 Joint Status Report and Provisional Discovery Plan that it intended to call "its representative(s)" to "testify regarding the allegations in the Complaint and facts related to the Loan." (Doc. 90) at 6. Also, in September 2018, Bennett, on behalf of Rushmore, verified Plaintiff's responses to Wellington's first set of interrogatories. (Doc. 107-2) at 14. The next month, Wellington emailed Plaintiff's counsel, who also represents Rushmore, that she planned to depose Plaintiff's Fed. R. Civ. P. 30(b)(6) corporate representative. (Doc.

---

[4]Wellington requests that the Court give her "an opportunity for further reply," if the Court provides Plaintiff an opportunity under Rule 56(e)(1) "to properly support" the allegation it erroneously assigned the Mortgage to JP Morgan Chase Bank, N.A. (Doc. 135) at 11 n. 9. Plaintiff, however, seeks no such opportunity under Rule 56(e)(1).

175) at 4-5. At a January 8, 2019, status conference, Plaintiff's counsel "verbally confirmed that she was the contact person for the Rushmore witnesses…." *Id.* at 5. Wellington, however, "failed to follow through" on arranging a deposition of a corporate representative. *Id.*

The Court notes that "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose" under Rule 37(c)(1). *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)). "Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

In a foreclosure case similar to this one, the Eleventh Circuit rejected the plaintiff's argument that the district court erred by considering an affidavit in support of the defendant's motion for summary judgment. *Chadwick v. Bank of Am., N.A.*, 616 Fed. Appx. 944, 947–48 (11th Cir. 2015). In *Chadwick*, the defendant did not explicitly identify its affiant as a witness in discovery disclosures. *Id.* at 948. Nonetheless, the plaintiff had notice, prior to the end of discovery, that the affiant "had information relevant to his claims." *Id.* The affiant, like in this case, had verified the defendant's "responses to interrogatories about the foreclosure process…." *Id.* Consequently, the affiant's "knowledge of the case should not have surprised [the plaintiff]." *Id.* Moreover, the plaintiff, similar to Wellington, "had ample opportunity to depose [the affiant], but simply chose not to do so." *Id.* In that sense, both the plaintiff in *Chadwick* and Wellington were not prejudiced by the "non-disclosure" of the affiant and could have cured any prejudice by seeking to depose that person prior to the close of discovery. Additionally,

9

Wellington has not demonstrated bad faith or willfulness on Plaintiff's part. Applying the well-reasoned decision in *Chadwick* as well as the applicable *Woodworker* factors to this case, the Court finds that Plaintiff's failure to formally disclose Bennett as a witness was harmless. Thus, the Court denies Wellington's request to strike Bennett's affidavit under Rule 37(c)(1).

*f. Admissibility of Statements in Bennett's Affidavit and Exhibit A*

Finally, Wellington argues that Bennett's affidavit contains ambiguous, conclusory, and inadmissible statements which the Court should disregard, and that the Court should disregard Exhibit A as inadmissible. First, Wellington attacks Bennett's assertion that he is an attorney in fact for Plaintiff as conclusory and unsupported by documentary evidence. In the summary judgment context, once Plaintiff submits an affidavit, affirmed under penalty of perjury, asserting that Bennett is an attorney in fact for Plaintiff, the burden shifts to Wellington to provide evidence to dispute that assertion. *See SAI v. Transportation Sec. Admin.*, 315 F. Supp. 3d 218, 256 (D.D.C. 2018) (holding that declaration attested under penalty of perjury is entitled to presumption of good faith unless opponent offers evidence that would permit "reasonable factfinder to question its veracity"); *Carbo Ceramics, Inc. v. Norton-Alcoa Proppants*, 155 F.R.D. 158, 164 (N.D. Tex. 1994) (noting that "person who makes statements under oath or penalty of perjury is presumed to tell the truth"). Wellington, however, does not provide any evidence to contradict Bennett's statement that he is an attorney in fact for Plaintiff. The Court, therefore, presumes that the assertion that Bennett is an attorney in fact for Plaintiff is true. Accordingly, this first challenge to Bennett's affidavit lacks merit.

Second, Wellington challenges Bennett's statement that he is familiar with Plaintiff's business records. Wellington complains that this statement is conclusory and ambiguous because Bennett, a Rushmore employee, does not explain how he is familiar with Plaintiff's

10

business records or how Plaintiff maintains those business records. Bennett, however, explains in the affidavit that he is familiar with Plaintiff's business records "[i]n the regular performance of [his] job functions" and he has "personally examined these business records…." (Doc. 123-3) at 3, ¶ 1.

Additionally, courts have widely accepted the adoptive business records doctrine wherein one company incorporates the business records of another company into its own business records. *United States v. Powers*, 578 Fed. Appx. 763, 779 (10th Cir. 2014) (observing that, although Tenth Circuit has not decided whether to approve adoptive business records doctrine, "courts of appeals have overwhelmingly chosen to recognize-either explicitly or implicitly-an adoptive business records doctrine"). Under that doctrine, the "record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6), [the business records exception to the hearsay rule,] are satisfied." *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010). As a custodian, the "custodian or other qualified witness need not have personal knowledge regarding the creation of the document offered, or personally participate in its creation, or even know who actually recorded the information." *Id.* (quoting *Resolution Trust Corp. v. Eason,* 17 F.3d 1126, 1132 (8th Cir.1994)).

The adoptive business records doctrine applies here for several reasons. First, Rushmore necessarily incorporates Plaintiff's business records into its own business records in order to service Plaintiff's mortgages and loans. *See Powers*, 578 Fed. Appx. at 777-80 (holding that district court did not commit plain error by admitting lender's business records under adoptive business records doctrine as business records of loan servicing company). Rushmore, thus, relies upon the accuracy of Plaintiff's business records to service its mortgages and loans.

Next, with respect to the requirements of Rule 803(6), the Tenth Circuit has explained that

> business records are admissible despite their hearsay nature if the records' custodian, or another qualified witness, testifies the records (1) were prepared in the normal course of business; (2) were made at or near the time of the events recorded; (3) were based on the personal knowledge of the entrant or of a person who had a business duty to transmit the information to the entrant; and (4) are not otherwise untrustworthy.

*United States v. Irvin*, 682 F.3d 1254, 1261 (10th Cir. 2012). In this case, Bennett attests, under penalty of perjury, that (1) "[i]t is a regular practice of Plaintiff's or its agent's mortgage servicing business to make these records;" and (2) the business "records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records…." (Doc. 123-3) at 3, ¶ 1. Furthermore, the fact that Bennett attests that he is familiar with Plaintiff's business records through "the regular performance of [his] job functions" and that he "personally examined these business records" indicate that the business records are not otherwise untrustworthy. In addition, the above statements by Bennett, made under penalty of perjury and not challenged by contradictory evidence, are presumed to be truthful. For these reasons, the business records Bennett relies on for his statements meet the requirements of Rule 803(6). Consequently, under the adoptive business records doctrine, Bennett, as a custodian or other qualified witness, need not have personal knowledge regarding the creation of Plaintiff's business records.

Next, Wellington argues that Bennett's statements and Exhibit A, a summary of Plaintiff's business records, nonetheless, constitute inadmissible hearsay.[5] Wellington cites

---

[5] Wellington further argues that Bennett created Exhibit A for litigation purposes because the amounts were calculated through November 1, 2018, three weeks prior to the filing of the Motion for Summary Judgment. Of course, Bennett would provide amounts calculated through

*Irvin*, a criminal case, to support that argument. First, Wellington cites *Irvin's* Rule 803(6) discussion to assert that statements regarding business records made by a person not employed by the company that maintains the business records and who has no personal knowledge of those business records are necessarily hearsay.

In the portion of the *Irvin* decision which Wellington cites, the Tenth Circuit faced the issue of whether the district court erred by admitting a chart under Fed. R. Evid. 1006[6] that summarized fraudulent activities which a cooperating defendant, Sparks, had testified to. 682 F.3d at 1261. The Tenth Circuit first observed that the materials upon which the summary was based must be admissible. *Id.* The Government argued that the loan files upon which the summary was based were admissible under the business records exception to the hearsay rule. *Id.* The Tenth Circuit noted that Sparks testified that (1) he had no personal knowledge of the loan files "largely maintained by various title companies for whom he had not worked;" (2) he "could not state whether the loan files were made or kept by the title companies in the regular course of their businesses;" and (3) "various documents within the loan files had been removed, destroyed, or otherwise modified." *Id.* at 1262. Consequently, the Tenth Circuit concluded that Sparks' testimony "was insufficient to establish the admissibility of the loan files as business records." *Id.*

Sparks' testimony is distinguishable from Bennett's affidavit in several significant ways. First, the adoptive business records doctrine does not apply to Sparks' testimony while the adoptive business records doctrine applies here, thereby permitting Bennett to attest to Plaintiff's

---

November 1, 2018, because Plaintiff was seeking a judgment for the current amounts due and owing.

[6] Rule 1006 allows a proponent to use a summary "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."

13

business records without needing to have personal knowledge of the creation of those records.[7] Second, unlike Sparks, Bennett attests that Plaintiff's business records "are kept in the course of business activity conducted regularly by Plaintiff or its agent." (Doc. 123-3) at 3, ¶ 1. Finally, there is no indication in this case that underlying files or business records have "been removed, destroyed, or otherwise modified." *See Irvin*, 682 F.3d at 1262.

Next, Wellington cites *Irvin* in asserting that Bennett failed to lay the proper foundation for the admissibility of the business records underlying Exhibit A's compilation of information. Without that foundation, Wellington maintains that Exhibit A is not admissible under Rule 1006. As the Court earlier concluded, Bennett has established the foundational requirements for admissibility under Rule 803(6), thereby providing the basis for admitting Exhibit A under Rule 1006. For the above reasons, the Court will consider Exhibit A as well as Bennett's affidavit in deciding the Motion for Summary Judgment.

   2. *Whether to Grant Summary Judgment*

"[A] cause of action against the maker of a promissory note is established if the plaintiff proves that: (1) plaintiff is the holder of the note on which [the plaintiff] sues; (2) defendant signed the note; (3) the note became due and payable; and (4) defendant has not paid the amount due and owing." *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1238 (D.N.M. 2012) (citation omitted). It is well-established in New Mexico that when a mortgagor defaults on a note secured by a mortgage a mortgagee may foreclose the mortgage. *Keppler v. Slade,* 1995–NMSC–035, ¶ 7, 119 N.M. 802 (holding that "upon default by the mortgagor, a mortgagee has independent remedies which he or she may pursue. The mortgagee may sue either on the note or

---

[7] Interestingly, the Tenth Circuit in discussing the admissibility of another exhibit in *Irvin* noted that the Tenth Circuit in *United States v. Carranco*, 551 F.2d 1197 (10th Cir. 1977) "can be read as assuming, without deciding, that one company can 'adopt' the business records of another company for purposes of Rule 803(6)." *Irvin*, 682 F.3d at 1265.

14

foreclose on the mortgage, and may pursue all remedies 'at the same time or consequently.'" (citations omitted)). In other words, as previously noted, the entity or person who has the right to enforce a note necessarily has the right to foreclose the mortgage which secures the note. *Simson v. Bilderbeck, Inc.*, 1966-NMSC-170, ¶¶ 13-14, 76 N.M. 667 (holding that one who has right to enforce note can foreclose mortgage).

It remains that Plaintiff is the holder of the Note at issue and that Wellington signed that Note. It is undisputed that the Note has been in default since February 1, 2011,[8] and it is due and owing. It is also undisputed that Wellington has not paid the amount of money that is due and owing under the Note. Consequently, Plaintiff has established, as a matter of law, a debt and money due claim against Wellington. The Court, therefore, will enter summary judgment in Plaintiff's favor as to Count I of the Complaint.

It is further undisputed that the Note is secured by the Mortgage, signed by Wellington, and that Wellington, the mortgagor, has defaulted on the Note. It is further undisputed that, other than Wellington, only Plaintiff has an interest in the property subject to the Mortgage. As such, Plaintiff, as a matter of law, is entitled to foreclose the Mortgage against Plaintiff. Hence, the Court will enter summary judgment in favor of Plaintiff as to Count II of the Complaint.

Although Plaintiff is entitled to summary judgment against Wellington on the claim for amounts due and owing on the Note and on the foreclosure claim, the Court cannot enter a judgment of foreclosure and sale without an updated calculation of amounts due and owing on the Note, including applicable expenses and costs. The Court must also appoint a special master to conduct the sale.

---

[8] The Court observes the length of time since Wellington has been in default with no indication she has attempted or a made any good faith effort to comply with the terms of the Note, including making any scheduled payments.

THEREFORE, IT IS ORDERED that

1. Plaintiff's Motion for Summary Judgment (Doc. 123) is granted;

2. summary judgment will be entered in Plaintiff's favor on Counts I and II of the Complaint;

3. Plaintiff has 21 days from the date of the entry of this Memorandum Opinion and Order to file a proposed judgment of foreclosure and sale, including an appointment of a special master;

4. Wellington has 14 days from the filing of the proposed judgment of foreclosure and sale to file objections to the proposed judgment of foreclosure and sale;

5. the Court will not entertain objections which it has previously addressed; and

6. Plaintiff has 14 days from the filing of any objections to file a response.

UNITED STATES DISTRICT JUDGE