IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MTGLQ INVESTORS, LP,

    Plaintiff,

vs.                                                                  Civ. No. 17-487 KG/LF

MONICA L. WELLINGTON,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon *pro se* Defendant Monica L. Wellington's (Wellington) Objections to Proposed Judgment & Foreclosure Decree (Objections), filed November 7, 2019. (Doc. 198). On December 10, 2019, Plaintiff filed a response. (Doc. 201). Having considered the Objections and the response, the Court sustains the Objections, in part, as described herein and will enter a Judgment of Foreclosure and Sale, and Appointment of Special Master based substantially on Plaintiff's proposed "Summary and Default Judgment, Decree of Foreclosure, and Appointment of Special Master" (Doc. 192).

*A. Background*

Plaintiff brought this foreclosure action against Wellington; The Monica L. Wellington Declaration of Trust Dated December 28, 2007; Altura Village Homeowners' Association, Inc.; JP Morgan Chase Bank, N.A.; and Wellington's unknown spouse.[1] (Doc. 1-1). On June 22, 2018, the Court dismissed Plaintiff's claims against Wellington's unknown spouse. (Doc. 83). On August 21, 2018, the Court entered a Stipulated Judgment Foreclosing the Interest of JP

---

[1] Wellington also filed counterclaims in this lawsuit, which the Court subsequently dismissed. (Docs. 12, 69, 72, and 73).

Morgan Chase Bank, N.A. (Doc. 100). Then, on July 22, 2019, the Court entered default foreclosure judgments in favor of Plaintiff and against The Monica L. Wellington Declaration of Trust Dated December 28, 2007, and Altura Village Homeowners' Association, Inc. (Doc. 169). Finally, on September 23, 2019, the Court entered summary judgment in favor of Plaintiff and against Wellington, thereby entitling Plaintiff "to foreclose on the property which is the subject of the Note and Mortgage at issue in this foreclosure action." (Doc. 179).

Also, on September 23, 2019, the Court ordered Plaintiff to prepare a proposed judgment of foreclosure and sale, including an appointment of a special master. (Doc. 178) at 16. The Court provided Wellington an opportunity to object to the proposed judgment of foreclosure and sale, and provided Plaintiff an opportunity to respond to those objections. *Id.* Wellington, in fact, filed Objections to Plaintiff's proposed "Summary and Default Judgment, Decree of Foreclosure, and Appointment of Special Master" and Plaintiff responded to those Objections. (Docs. 198 and 201).

B. *Wellingtons' Objections*

   1. *First Objection*

Wellington contends that the Court "simply skipped over" the issue that no evidence supports Plaintiff's allegation that MERS erroneously released the Mortgage to JP Morgan Chase Bank, N.A. (Doc. 198) at 1 n. 1. The Court, however, addressed that precise issue in its Memorandum Opinion and Order granting Plaintiff's motion for summary judgment. (Doc. 178) at 6-8. The first objection, therefore, lacks merit and is overruled.

   2. *Second Objection*

Wellington objects to Plaintiff's claims for attorney fees ($14,204.65) and attorney costs ($971.54), citing Fed. R. Civ. P. 54(d)(2)(A). *See* (Doc. 192) at 2, ¶ 4. Rule 54(d)(2)(A)

2

provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Wellington argues that Rule 54(d)(2)(A), thus, requires Plaintiff to file a motion to seek an award of the attorney fees and attorney costs. Plaintiff concedes that it must file such a motion and "agrees to remove its attorney fees and costs from the form of judgment, and will submit its separate motion within the timelines outlined in the Federal Rules of Civil Procedure." (Doc. 201) at 2. Hence, Wellington's objection to Plaintiff's claims for attorney fees and attorney costs is now moot.

*3. Third Objection*

Wellington objects to Plaintiff's claims for corporate advances ($760.22 for property inspections and property preservation) and escrow advances ($17,694.95 for hazard insurance and taxes). (Doc. 192) at 2, ¶ 4. Wellington also objects to Plaintiff's claim for any future "property taxes and insurance premiums" that "Plaintiff will be required to pay prior to termination of this action…." *Id.* at 3, ¶ B. Wellington contends that Plaintiff has not provided any evidentiary support for the above claims.

As Plaintiff notes, it submitted a sworn affidavit by Michael Bennett in support of its motion for summary judgment in which Bennett stated that Wellington owed Plaintiff corporate advances of $760.22 and escrow advances of $17,694.95, the amount of the advances Plaintiff now claims. (Doc. 123-3) at ¶ 5. In her response to Plaintiff's motion for summary judgment, Wellington attacked the affidavit for the following reasons: (1) Plaintiff did not disclose Bennett as a witness; (2) the affidavit was ambiguous and conclusory; and (3) the affidavit contained inadmissible hearsay. (Doc. 135) at 7-10. Wellington, however, did not specifically attack the accuracy of the amounts of the corporate and escrow advances Bennett provided.

3

The Court subsequently rejected Wellington's attacks on Bennett's affidavit and found the affidavit was admissible. (Doc. 178) at 8-14. Therefore, the Court accepts the affidavit as providing evidentiary support for Plaintiff's claims for corporate and escrow advances.

In addition, Plaintiff asserts that Wellington waived any objection to the amounts of the corporate and escrow advances because her response to Plaintiff's motion for summary judgment did not contest the accuracy of the amounts of those advances in Bennett's affidavit. The Court finds merit in that argument as well. *See In re Jack's Const., Inc.*, 2011 WL 1321386, at *4 n.3 (Bankr. D.N.M) (observing that "[g]enerally, unless a nonmovant moves to strike or files a formal objection that details the specific paragraphs to be stricken and the reasons why, there is a waiver and the trial court is free to consider all evidence before it").

With respect to Plaintiff's claims for future payments of property taxes and insurance premiums, the Mortgage specifically provides that the Borrower must pay escrow items, like property taxes and insurance premiums. (Doc. 1-1) at 32, ¶ 3. If a "Borrower fails to perform the covenants and agreements contained in" the Mortgage, the "Lender may do and pay for whatever is reasonable or appropriate to protect Lenders's interest in the Property and rights under this" Mortgage. *Id.* at 35, ¶ 9. "Any amounts disbursed by Lender" as result of the Borrower's failure "to perform the covenants and agreements contained in" the Mortgage, "shall become additional debt of Borrower secured by this" Mortgage. *Id.* The Mortgage also provides that, if a Borrower fails to maintain insurance coverage, the "Lender may obtain insurance coverage, at Lender's option and Borrower's expense." (Doc. 1-1) at 33, ¶ 5. The Mortgage clearly provides that as long as Wellington is a "Borrower," she is liable for Plaintiff's payment of any future property taxes and insurance premiums until the termination of this lawsuit.

For the foregoing reasons, the Court overrules Wellington's objections to Plaintiff's claims for corporate and escrow advances and any future claims for payments of property taxes and insurance premiums.

*4. Fourth Objection*

Wellington objects to the entirety of Paragraph C in which Plaintiff seeks to reserve "the right to petition the Court for entry of a deficiency judgment in the event sale proceeds are insufficient to satisfy its judgment." (Doc. 192) at 3, ¶ C. Wellington contends that the subject of a deficiency judgment is new and has not been adjudicated, and that Plaintiff cites no authority to support its right to a deficiency judgment.

"As a general rule, the court cannot control or restrict the enforcement and collection of a judgment to any specific fund or property, at least not without some specific authority on point." *Springer Grp., Inc. v. Wittelsohn*, 1999-NMCA-120, ¶ 19, 128 N.M. 36. A court, therefore, commits arbitrary and reversible error if it "disallow[s] a deficiency judgment without any evidence in the record to support the decision," such as an enforceable contractual limitation on the collection of damages. *Id.* at ¶¶ 18-21. Here, Wellington does not provide any specific authority or evidence to demonstrate why Plaintiff cannot reserve the right to petition for a deficiency judgment, if necessary, to satisfy the judgment. Accordingly, the Court overrules Wellington's objection to Paragraph C.

*5. Fifth Objection*

Wellington objects to the following proposed provisions: (1) "The purchaser shall have the right to immediate possession of the property;" (2) "If personal property remains at the real property after the occupants vacate, the personal property is deemed abandoned and the purchaser may dispose of the property in any manner allowed by law;" and (3) the Court retains

5

jurisdiction to assist "the purchaser at the foreclosure sale, or its successors or assigns, in obtaining possession of the property, if necessary…." (Doc. 192) at 4-5 ¶¶ D, F, and ¶ I. Wellington asserts that Plaintiff does not have standing to argue on behalf of a purchaser, who is not a party to this lawsuit. Wellington further asserts that Plaintiff did not seek in its Complaint for Debt and Money Due and for Foreclosure (Doc. 1-1) the injunctive relief sought in the above proposed provisions nor was that relief adjudicated.

The Court already has held that Plaintiff has standing to enforce the Note by foreclosing on the Mortgage, (Doc. 71) at 6-8, which means Plaintiff has standing to "force a sale in order to satisfy the unpaid debt secured by the property." *Black's Law Dictionary* (11th ed. 2019) (defining "Foreclosure"). Here, Plaintiff specifically requests in its Complaint for Debt and Money Due and for Foreclosure "[t]hat the Property be sold under the direction of the Court by a special master appointed for such purpose and the proceeds of such sale be applied in the priority provided in the Mortgage and according to law…." (Doc. 1-1) at 5, ¶ D. Because Plaintiff has standing to seek a foreclosure through a sale of the property, Plaintiff properly proposes provisions related to a purchaser's ability to possess the property upon the completion of the sale. If those proposed provisions are not included in a judgment of foreclosure, a sale of the property would be next to impossible to conclude and would, for all intents and purposes, extinguish Plaintiff's right to foreclose. For these reasons, the Court overrules Wellington's objections to the proposed provisions concerning the purchaser's possession of the property.

    *6. Sixth Objection*

Wellington objects to Paragraph G, in its entirety, which proposes that "Plaintiff shall be allowed to bid the amount of its judgment, in part or in its entirety, in lieu of cash at the sale." (Doc. 192) at 4, ¶ G. Wellington first contends that the Court should exclude Paragraph G

because Plaintiff's "judgment is subject to a pending appeal." (Doc. 198) at 4. The Tenth Circuit Court of Appeals, however, dismissed the appeal for lack of jurisdiction so this contention is now moot. (Doc. 199).

Wellington also contends that Paragraph G "would not allow for payment of any costs associated with any sale proceeding, nor for payment of any potential surplus money." (Doc. 198) at 4. The Court finds that Paragraph G needs clarification as to the payment of costs and expenses associated with the sale. The Court, therefore, sustains that part of Wellington's objection. The Court substitutes the following well-accepted language, modified for this case, for the language in Paragraph G:

> Plaintiff may bid for and acquire the property and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness secured by the Mortgage the net sales price after deducting therefrom the costs and expenses of the sale and any additional advances made by Plaintiff as allowed by this Judgment of Foreclosure and the Mortgage.

*See, e.g.,* S. Saft, *Commercial Real Estate Transactions* § 9:31 (3d ed.); G. Robinson, *Real Estate Forms: Tax Analysis and Checklists* ¶ C2.03, § 3.11 (2d ed. 2000, updated Aug. 2019).

On the other hand, the Court determines that the proposed provision stating that "additional surplus monies, if any," will "be distributed in accordance with the further order of the Court" adequately addresses the possibility of surplus money resulting from a sale in which Plaintiff bid the amount of its judgment. (Doc. 192) at 4, ¶ E(4). The Court overrules that part of Wellington's objection to Paragraph G.

*7. Seventh Objection*

Finally, Wellington requests that the Special Master disclose in the foreclosure sale advertisement the existence of a pending appeal. As noted above, the Tenth Circuit dismissed the appeal. Consequently, this objection is moot.

IT IS ORDERED that Wellington's Objections to Proposed Judgment & Foreclosure Decree (Doc. 198) are sustained, in part, in that

1. the claims for attorney fees ($14,204.65) and attorney costs ($971.54) will be excluded from a Judgment of Foreclosure and Sale, and Appointment of Special Master;

2. the Court will modify Paragraph G, the proposed provision allowing Plaintiff to bid the amount of its judgment, as described above; and

3. the Court will enter a Judgment of Foreclosure and Sale, and Appointment of Special Master in accord with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE